HANKINS *v.* STATE.

4339 178 S. W. 2d 56

Opinion delivered February 28, 1944.

*Robert A. Zebold* and *Rowell, Rowell & Dickey,* for appellant.

*Guy E. Williams,* Attorney General, and *Oscar E. Ellis,* Assistant Attorney General, for appellee.

GRIFFIN SMITH, C. J. The only question is one of fact—was the evidence sufficient to support the jury's

verdict of murder in the first degree, for which a life sentence was imposed.

Appellant admitted killing Luther McEntire, but denied the intent. In a signed statement made while in jail his explanation was that the two were drinking. While on a joint mission at night to procure more whiskey an argument occurred. The controversy was trivial. McEntire, said the accused, asked him if he had a pistol, asserting that he had one, and also had a machine gun, "all of which I did not believe." Appellant says this argument continued until he hit McEntire with his fist two or three times, knocking him down. "I then picked up a piece of brick and hit him on the head at least three times." The victim struggled very little and did not cry out. Appellant, while McEntire was prone and either dead or unconscious, "went through his pockets," taking a watch and billfold. There was no money in the billfold. Without realizing that McEntire was dead, appellant went to the home of a sister and found blood on his shirt. The garment was burned and replaced with a clean one. In searching the billfold appellant dropped McEntire's social security card. It was found the following morning by the sister's young daughter, who returned it to appellant. The latter destroyed it.

Appellant testified at variance with his confession. As a witness he said he met McEntire the night of the tragedy at a Negro beer joint. The argument mentioned in the confession occurred in an open field:—"I struck him with my fist. Then, in the 'tumble,' I hit him with something. I was mad and drunk. I think I hit him with a rock about the size of my fist, but did not intend to kill him."

Continuing his testimony, appellant said he had known McEntire (a pawnbroker) for some time; had borrowed money from him, and understood he always wore a money belt. He denied having said, in the written confession, that he robbed McEntire:—"I said I took the stuff. . . . It was my intention to give it back to him." Inference to be drawn from appellant's testimony is that he knew passers-by might find the helpless

man and take his money and other belongings; therefore appellant became a self-constituted trustee for the owner.

There was other testimony of a circumstantial nature. After his arrest appellant directed officers to an old stump where McEntire's watch had been hidden. The billfold was also found where appellant said it had been concealed, although his first direction was erroneous.

Nature of the injury inflicted,[1] the fact that appellant remembered his conversation with McEntire and details of the argument about pistols and a machine gun— these were matters the jury had a right to take into consideration in determining whether the homicide was deliberately committed to effectuate robbery. The accused's actions immediately following the transaction— discovery of blood on his clothing, concealment of the billfold and watch, all were acts the jury should have considered in reaching its verdict.

According to appellant's testimony he was "mad," and didn't believe McEntire when the latter asserted he had a pistol and machine gun. He first hit McEntire with his fist, then as they "tangled" he picked up a rock and struck several blows. The manner of a killing is immaterial except to show the disposition of mind, or intent with which the act was committed. Pope's Digest, § 2965. Where the offense can be completed only by doing a particular thing with a specific intent, it may be shown that at the time the thing charged was done the accused was so drunk that he was incapable of entertaining the intent necessary to constitute the crime. *Chowning* v. *State,* 91 Ark. 503, 121 S. W. 735, 18 Ann. Cas. 529.

There was substantial testimony from which the jury could find that appellant intended to rob McEntire. It follows that if he were capable of forming an intent to rob, he was not too drunk to intentionally use the stone.

---

[1] Deputy Sheriff J. S. Core testified: "The body was lying on its back, its left leg and knee drawn up, and the shoes were off the body and laying close to the feet. His belt had been loosened and his pockets were all turned wrong side out and there was one large gash over the left mastoid, I would say possibly three inches long gaping open about an inch wide and an inch deep. A pool of blood was just under the head."

If the *act* appellant intended was criminal, then the law holds him accountable, even though such *result* was not intended. *Gilmore* v. *State,* 92 Ark. 205, 122 S. W. 493.

Affirmed.