Ronnie MIDGETT, Sr. *v.* STATE of Arkansas

CR 86-215                                    729 S.W.2d 410

Supreme Court of Arkansas
Opinion delivered May 25, 1987
[Supplemental Opinion on Denial of Rehearing June 29, 1987.*]

---

* Hickman, Hays and Glaze, JJ., would grant rehearing.

*Edward T. Barry*, for appellant.

*Steve Clark*, Att'y Gen., by: *J. Brent Standridge*, Asst. Att'y Gen., for appellee.

DAVID NEWBERN, Justice. This child abuse case resulted in the appellant's conviction of first degree murder. The sole issue on appeal is whether the state's evidence was sufficient to sustain the conviction. We hold there was no evidence of the ". . . premeditated and deliberated purpose of causing the death of another person . . ." required for conviction of first degree murder by Ark. Stat. Ann. § 41-1502(1)(b) (Repl. 1977). However, we find the evidence was sufficient to sustain a conviction of second degree murder, described in Ark. Stat. Ann. § 41-1503(1)(c) (Repl. 1977), as the appellant was shown to have caused his son's death by delivering a blow to his abdomen or chest ". . . with the purpose of causing serious physical injury. . . ." The conviction is thus modified from one of first degree murder to one of second degree murder and affirmed.

The facts of this case are as heart-rending as any we are likely to see. The appellant is six feet two inches tall and weighs 300 pounds. His son, Ronnie Midgett, Jr., was eight years old and weighed between thirty-eight and forty-five pounds. The evidence showed that Ronnie Jr. had been abused by brutal beating over a substantial period of time. Typically, as in other child abuse cases, the bruises had been noticed by school personnel, and a school counselor as well as a SCAN worker had gone to the Midgett home to inquire. Ronnie Jr. would not say how he had obtained the bruises or why he was so lethargic at school except to blame it all, vaguely, on a rough playing little brother. He did not even complain to his siblings about the treatment he was receiving from the appellant. His mother, the wife of the appellant, was not living in the home. The other children apparently were not being physically abused by the appellant.

Ronnie Jr.'s sister, Sherry, aged ten, testified that on the Saturday preceding the Wednesday of Ronnie Jr.'s death their father, the appellant, was drinking whiskey (two to three quarts that day) and beating on Ronnie Jr. She testified that the appellant would "bundle up his fist" and hit Ronnie Jr. in the stomach and in the back. On direct examination she said that she had not previously seen the appellant beat Ronnie Jr., but she had seen the appellant choke him for no particular reason on Sunday nights after she and Ronnie Jr. returned from church. On cross-examination, Sherry testified that Ronnie Jr. had lied and her father was, on that Saturday, trying to get him to tell the truth.

She said the bruises on Ronnie Jr.'s body noticed over the preceding six months had been caused by the appellant. She said the beating administered on the Saturday in question consisted of four blows, two to the stomach and two to the back.

On the Wednesday Ronnie Jr. died, the appellant appeared at a hospital carrying the body. He told hospital personnel something was wrong with the child. An autopsy was performed, and it showed Ronnie Jr. was a very poorly nourished and underdeveloped eight-year-old. There were recently caused bruises on the lips, center of the chest plate, and forehead as well as on the back part of the lateral chest wall, the soft tissue near the spine, and the buttocks. There was discoloration of the abdominal wall and prominent bruising on the palms of the hands. Older bruises were found on the right temple, under the chin, and on the left mandible. Recent as well as older, healed, rib fractures were found.

The conclusion of the medical examiner who performed the autopsy was that Ronnie Jr. died as the result of intra-abdominal hemorrhage caused by a blunt force trauma consistent with having been delivered by a human fist. The appellant argues that in spite of all this evidence of child abuse, there is no evidence that he killed Ronnie Jr. having premeditated and deliberated causing his death. We must agree.

It is true that premeditation and deliberation may be found on the basis of circumstantial evidence. That was the holding in *House* v. *State*, 230 Ark. 622, 324 S.W.2d 112 (1959), where the evidence showed a twenty-four-year-old man killed a nineteen-year-old woman with whom he was attempting to have sexual intercourse. The evidence showed a protracted fight after which the appellant dumped the body in a water-filled ditch not knowing, according to House's testimony, whether she was dead or alive. Although it is not spelled out, presumably the rationale of the opinion was that House had time to premeditate during the fight and there was substantial evidence he intended the death of the victim when he left her in the water. Our only citation of authority on the point of showing premeditation and deliberation by circumstantial evidence in that case was *Weldon* v. *State*, 168 Ark. 534, 270 S.W. 968 (1925), where we said:

The very manner in which the deadly weapons were used

was sufficient to justify the jury in finding that whoever killed Jones used the weapons with a deliberate purpose to kill. Jones' body was perforated three times through the center with bullets from a pistol or rifle, and was also horribly mutilated with a knife. The manner, therefore, in which these deadly weapons were used tended to show that the death of Jones was the result of premeditation and deliberation.

While a fist may be a deadly weapon, the evidence of the use of the fist in this case is not comparable to the evidence in *House* v. *State, supra,* and *Weldon* v. *State, supra,* where there was some substantial evidence consisting of other circumstances that the appellant who dumped the apparently immobile body in the water and walked away and the appellant who wielded the deadly weapons intended and premeditated that death occur. Nor do we have in this case evidence of any remark made or other demonstration that the appellant was abusing his son in the hope that he eventually would die.

The annotation at 89 A.L.R. 2d 396 (1963) deals with the subject of crimes resulting from excessive punishment of children. While some of the cases cited are ones in which a parent or step-parent flew into a one-time rage and killed the child, others are plain child abuse syndrome cases like the one before us now. None of them, with one exception, resulted in affirmance of a first degree murder conviction. Several were decisions in which first degree murder convictions were set aside for lack of evidence of premeditation and deliberation. *See, e.g., People* v. *Ingraham,* 232 N.Y. 245, 133 N.E. 575 (1921); *Pannill* v. *Commonwealth,* 185 Va. 244, 38 S.W.2d 457 (1946). The case cited in the annotation in which a first degree murder conviction was affirmed is *Morris* v. *State,* 270 Ind. 245, 384 N.E.2d 1022 (1979). There the appellant was left alone for about fifteen minutes with his five-month-old baby. When the child's mother returned to their home she found the baby had been burned severely on one side. About a month later, the appellant and his wife were engaged in an argument when the baby began to whine. The appellant laid the baby on the floor, began hitting the baby in the face and then hit the baby's head on the floor, causing the baby's death. At the time of the offense, the Indiana law required malice, purpose, and premeditation to convict of first degree murder. In discussing the

premeditation requirement, the court said only:

> Premeditation which also may be inferred from the facts and circumstances surrounding the killing, need not long be deliberated upon, but may occur merely an instant before the act. [Citation omitted.] It is clear from the facts adduced at trial regarding the burning and beating of the child that the jury could well have inferred that his killing was perpetrated purposely and with premeditated malice. [384 N.E.2d at 1024]

No explanation is given for the quantum leap from "the facts," horrible as they were, to the inference of premeditation. We made the same error in *Burnett* v. *State*, 287 Ark. 158, 697 S.W.2d 95 (1985), another child abuse case in which the facts were particularly repugnant, where we said:

> Premeditation, deliberation and intent may be inferred from the circumstances of the case, such as the weapon used and the nature, extent and location of the wounds inflicted . . . . [T]he weapon used was a fist which struck the abdomen with such force as to rupture the colon. The child sustained fingernail scratches, four broken ribs, and other internal damage, as well as numerous bruises due to blows with a fist all over his body. The required mental state for first degree murder can be inferred from the evidence of abuse, which is substantial. [287 Ark. at 162-163, 697 S.W.2d at 98]

The problem with these cases is that they give no reason, like the reasons found in *House* v. *State, supra,* and *Weldon* v. *State, supra,* to make the inference of premeditation and deliberation.

In *Simmons* v. *State,* 227 Ark. 1109, 305 S.W.2d 119 (1957), the appellant was antagonized more than once by his victims. After the first time he went home and got his shotgun to use, he said, for hunting squirrels. We modified the conviction from first degree murder to second degree murder, noting that the appellant had opportunities to kill the victims after he had obtained his weapon but before he shot them. His having let those opportunities pass negated premeditation and deliberation. We said:

> There is no testimony of any witness, aside from the

testimony of appellant in open court and his written confession, from which the jury could have found the existence of premeditation and deliberation. Neither do we find any circumstance which amounts to substantial evidence upon which a finding of premeditation and deliberation could be based. Consequently we are led to conclude that the jury must have resorted to speculation rather than substantial evidence in arriving at a verdict of murder in the first degree. [227 Ark. at 110-111, 305 S.W.2d at 120]

The appellant argues, and we must agree, that in a case of child abuse of long duration the jury could well infer that the perpetrator comes not to expect death of the child from his action, but rather that the child will live so that the abuse may be administered again and again. Had the appellant planned his son's death, he could have accomplished it in a previous beating.

In this case the evidence might possibly support the inference that the blows which proved fatal to Ronnie Jr. could have been struck with the intent to cause his death developed in a drunken, misguided, and overheated attempt at disciplining him for not having told the truth. Even if we were to conclude there was substantial evidence from which the jury could fairly have found the appellant intended to cause Ronnie Jr.'s death in a drunken disciplinary beating on that Saturday, there would still be no evidence whatever of a premeditated and deliberated killing.

In *Ford* v. *State*, 276 Ark. 98, 633 S.W.2d 3, *cert. den.* 459 U.S. 1022 (1980), we held that to show the appellant acted with a premeditated and deliberated purpose, the state must prove that he (1) had the conscious object to cause death, (2) formed that intention before acting, and (3) weighed in his mind the consequences of a course of conduct, as distinguished from acting upon sudden impulse without the exercise of reasoning power. Viewing the evidence most favorable to the appellee, the circumstances of this case are not substantial evidence the appellant did (2) and (3), as opposed to acting on impulse or with no conscious object of causing death. The jury was thus forced to resort to speculation on these important elements.

A clear exposition of the premeditation and deliberation requirement which separates first degree from second degree

murder is found in 2 W. LaFave and A. Scott, Jr., *Substantive Criminal Law* § 7.7 (1986):

> Almost all American jurisdictions which divide murder into degrees include the following two murder situations in the category of first degree murder: (1) intent-to-kill murder where there exists (in addition to the intent to kill) the elements of premeditation and deliberation, and (2) felony murder where the felony in question is one of five or six listed felonies, generally including rape, robbery, kidnapping, arson and burglary. Some states instead or in addition have other kinds of first degree murder.
>
> (a) Premeditated, Deliberate, Intentional Killing. To be guilty of this form of first degree murder the defendant must not only intend to kill but in addition he must premeditate the killing and deliberate about it. It is not easy to give a meaningful definition of the words "premeditate" and "deliberate" as they are used in connection with first degree murder. Perhaps the best that can be said of "deliberation" is that it requires a cool mind that is capable of reflection, and of "premeditation" that it requires that the one with the cool mind did in fact reflect, at least for a short period of time before his act of killing.
>
> It is often said that premeditation and deliberation require only a "brief moment of thought" or a "matter of seconds," and convictions for first degree murder have frequently been affirmed where such short periods of time were involved. The better view, however, is that to "speak of premeditation and deliberation which are instantaneous, or which take no appreciable time, . . . destroys the statutory distinction between first and second degree murder," and (in much the same fashion that the felony-murder rule is being increasingly limited) this view is growing in popularity. This is not to say, however, that premeditation and deliberation cannot exist when the act of killing follows immediately after the formation of the intent. The intention may be finally formed only as a conclusion of prior premeditation and deliberation, while in other cases the intention may be formed without prior thought so that premeditation and deliberation occurs only

> with the passage of additional time for "further thought, and a turning over in the mind." [Footnotes omitted.]

The evidence in this case supports only the conclusion that the appellant intended not to kill his son but to further abuse him or that his intent, if it was to kill the child, was developed in a drunken, heated, rage while disciplining the child. Neither of those supports a finding of premeditation or deliberation.

Perhaps because they wish to punish more severely child abusers who kill their children, other states' legislatures have created laws permitting them to go beyond second degree murder. For example, Illinois has made aggravated battery one of the felonies qualifying for "felony murder," and a child abuser can be convicted of murder if the child dies as a result of aggravated battery. *See People* v. *Ray*, 399 N.E.2d 977 (Ill. App. 1979). Georgia makes "cruelty to children" a felony, and homicide in the course of cruelty to children is "felony murder." *See Bethea* v. *State*, 304 S.E. 2d 713 (Ga. 1983). Idaho has made murder by torture a first degree offense, regardless of intent of the perpetrator to kill the victim, and the offense is punishable by the death penalty. *See State* v. *Stuart*, 715 P.2d 833 (Idaho 1985). California has also adopted a murder by torture statute making the offense murder in the first degree without regard to the intent to kill. *See People* v. *Demond*, 59 Cal. App. 3d 574, 130 Cal. Rptr. 590 (1976). *Cf. People* v. *Steger*, 128 Cal. Rptr. 161, 546 P.2d 665 (1976), in which the California Supreme Court held that the person accused of torture murder in the first degree must be shown to have had a premeditated intent to inflict extreme and prolonged pain in order to be convicted.

All of this goes to show that there remains a difference between first and second degree murder, not only under our statute, but generally. Unless our law is changed to permit conviction of first degree murder for something like child abuse or torture resulting in death, our duty is to give those accused of first degree murder the benefit of the requirement that they be shown by substantial evidence to have premeditated and deliberated the killing, no matter how heinous the facts may otherwise be. We understand and appreciate the state's citation of *Burnett* v. *State, supra,* but, to the extent it is inconsistent with this opinion, we must overrule it.

The dissenting opinion begins by stating the majority concludes that one who starves and beats a child to death cannot be convicted of murder. That is not so, as we are affirming the conviction of murder; we are, however, reducing it to second degree murder. The dissenting opinion's conclusion that the appellant starved Ronnie Jr., must be based solely on the child's underdeveloped condition which could, presumably, have been caused by any number of physical malfunctions. There is no evidence the appellant starved the child. The dissenting opinion says it is for the jury to determine the degree of murder of which the appellant is guilty. That is true so long as there is substantial evidence to support the jury's choice. The point of this opinion is to note that there was no evidence of premeditation or deliberation which are required elements of the crime of first degree murder. The dissenting opinion cites two child abuse cases in which first degree murder convictions have been affirmed. One is *Morris* v. *State, supra,* with which we dealt earlier in this opinion. The other is *Lindsey* v. *State,* 501 S.W.2d 647 (Tex. Crim. App. 1973), in which the opinion does not say the conviction was for first degree murder. In fact, the issue there was whether the killing occurred with "intent and malice" which are obviously not the same as premeditation and deliberation.

In this case we have no difficulty with reducing the sentence to the maximum for second degree murder. *Dixon* v. *State,* 260 Ark. 857, 545 S.W.2d 606 (1977). The jury gave the appellant a sentence of forty years imprisonment which was the maximum for first degree murder, and we reduce that to twenty years which is the maximum imprisonment for second degree murder. Just as walking away from the victim in the water-filled ditch in *House* v. *State, supra,* after a protracted fight, and the "overkill" and mutilation of the body in *Weldon* v. *State, supra,* were circumstances creating substantial evidence of premeditation and deliberation, the obvious effect the beatings were having on Ronnie Jr. and his emaciated condition when the final beating occurred are circumstances constituting substantial evidence that the appellant's purpose was to cause serious physical injury, and that he caused his death in the process. That is second degree murder, § 41-1503(1)(c). Therefore, we reduce the appellant's sentence to imprisonment for twenty years.

Affirmed as modified.

HICKMAN, HAYS, and GLAZE, JJ., dissent.

DARRELL HICKMAN, Justice, dissenting. Simply put, if a parent deliberately starves and beats a child to death, he cannot be convicted of the child's murder. In reaching this decision, the majority overrules a previous unanimous decision and substitutes its judgment for that of the jury. The majority has decided it cannot come to grips with the question of the battered child who dies as a result of deliberate, methodical, intentional and severe abuse. A death caused by such acts is murder by any legal standard, and that fact cannot be changed—not even by the majority. The degree of murder committed is for the jury to decide—not us.

Convictions for murder resulting from child abuse have become more common in our courts. That is probably because such cases are being reported more often and prosecutors are more apt to seek retribution.

The decision of what charge to file in a homicide case rests with the prosecuting attorney. He has the duty to prove the charge. The decision of whether the state has proved the crime rests with the jury. Our role is only to determine if substantial evidence exists to support the verdict.

Sometimes the facts may warrant a charge of second degree murder. We have affirmed convictions for second degree murder in two such cases. *Boone* v. *State*, 282 Ark. 274, 668 S.W.2d 17 (1984); *Limber* v. *State*, 264 Ark. 479, 572 S.W.2d 402 (1978).

Whether the particular acts of child abuse amount to first degree murder depend on the particular facts and circumstances in each case. Just as in any other murder case, the state must prove each element of the crime. For a first degree murder conviction, the state must prove premeditation and deliberation.

We have never held motive relevant to murder, nor do we even try to look into the warped minds that commit murder to make their acts rational. *Parker* v. *State*, 290 Ark. 158, 717 S.W.2d 800 (1986). Consequently, circumstantial evidence usually plays a strong part in determining intent in any murder case.

In this case the majority, with clairvoyance, decides that this parent did not intend to kill his child, but rather to keep him alive

for further abuse. This is not a child neglect case. The state proved Midgett starved the boy, choked him, and struck him several times in the stomach and back. The jury could easily conclude that such repeated treatment was intended to kill the child.

In *Burnett* v. *State, supra*, the state chose to seek a first degree murder conviction. The child was killed in an extremely horrible way. He was malnourished and dehydrated, bruises on his face and upper and lower extremities, four broken ribs, a ruptured colon, and abrasions. His life was made intolerable and insufferable until at last a blow killed him. The parents, who could not have been unaware or innocent, were found guilty of killing him, which they did. We unanimously upheld that jury verdict. It was no "quantum leap" on our part (whatever that means), just a decision based on the facts and the law. The majority unanimously joined in the *Burnett* decision.

The facts in this case are substantial to support a first degree murder conviction. The defendant was in charge of three small children. The victim was eight years old and had been starved; he weighed only 38 pounds at the time of his death. He had multiple bruises and abrasions. The cause of death was an internal hemorrhage due to blunt force trauma. His body was black and blue from repeated blows. The victim's sister testified she saw the defendant, a 30 year old man, 6'2" tall, weighing 300 pounds, repeatedly strike the victim in the stomach and back with his fist. One time he choked the child.

The majority is saying that as a matter of law a parent cannot be guilty of intentionally killing a child by such deliberate acts. Why not? Is it because it is inconceivable to rational people that a parent would intend to kill his own child? Evidently, this is the majority's conclusion, because they hold the intention of Midgett was to keep him alive for further abuse, not kill him. How does the majority know that? How do we ever know the actual or subliminal intent of a defendant? "If the *act* appellant intended was criminal, then the law holds him accountable, even though such *result* was not intended." *Hankins* v. *State*, 206 Ark. 881, 178 S.W.2d 56 (1944); see also *Black* v. *State*, 215 Ark. 618, 222 S.W.2d 816 (1949). There is no difference so far as the law is concerned in this case than in any other murder case. It is simply a question of proof. This parent killed his own child, and the

majority cannot accept the fact that he intended to do just that.

Undoubtedly, the majority could accept it if the child were murdered with a bullet or a knife; but they cannot accept the fact, and it is a fact, that this defendant beat and starved his own child to death. His course of conduct could not have been negligent or unintentional.

Other states have not hesitated to uphold a conviction for first degree murder in such cases. *Morris* v. *State*, 384 N.E.2d 1022 (Ind. 1979); *Lindsey* v. *State*, 501 S.W.2d 647 (Tex. 1973). The fact that some states (California and Idaho) have passed a murder by torture statute is irrelevant. Those statutes may make it easier to prosecute child murderers, but they do not replace or intend to replace the law of murder. Whether murder exists is a question of the facts—not the method. The majority spends a good deal of effort laboring over the words "premeditation and deliberation," ignoring what the defendant did. Oliver Wendell Holmes said: "We must think things not words . . ." Holmes, "Law in Science and Science in Law," *Collected Legal Papers*, p. 238 (1921). If what Midgett did was deliberate and intentional, and that is not disputed, and he killed the child, a jury can find first degree murder.

I cannot fathom how this father could have done what he did; but it is not my place to sit in judgment of his mental state, nor allow my human feelings to color my judgment of his accountability to the law. The law has an objective standard of accountability for all who take human life. If one does certain acts and the result is murder, one must pay. The jury found Midgett guilty and, according to the law, there is substantial evidence to support that verdict. That should end the matter for us. He is guilty of first degree murder in the eyes of the law. His moral crime as a father is another matter, and it is not for us to speculate why he did it.

I would affirm the judgment.

HAYS and GLAZE, JJ., join in the dissent.

## Supplemental Opinion on Denial of Rehearing
### June 29, 1987

731 S.W.2d 774

1. APPEAL & ERROR — NO BASIS FOR GRANTING REHEARING. — Where appellant only reargues a question raised on appeal he presents no basis for granting rehearing. [Ark. Sup. Ct. R. 20(g).]
2. CRIMINAL LAW — FIRST DEGREE MURDER. — Ark. Stat. Ann. § 41-1502(3) (Supp. 1985) provides that first degree murder is a class Y felony, and a person convicted of a class Y felony may be sentenced to a term of not less than ten years and not more than forty years, or life.
3. APPEAL & ERROR — INSUFFICIENT PROOF TO SUPPORT JURY'S VERDICT OF A HIGHER OFFENSE — APPELLATE COURT MAY REDUCE SENTENCE. — If the evidence proves insufficient to support a jury's verdict of a higher offense, the trial court may sentence the defendant for a lesser included offense where the evidence clearly shows the commission of the latter and the appellate court, in its discretion, may reduce the sentence to that prescribed for the lesser offense.

Petition for Rehearing; denied.

DAVID NEWBERN, Justice. ■ The appellant only reargues the question whether there was evidence of premeditation and deliberation and thus presents no basis for granting rehearing. Arkansas Supreme Court and Court of Appeals Rule 20(g). However, both parties have pointed out an error of law in our opinion. We stated that the maximum sentence for first degree murder is forty years imprisonment. We should have said the maximum term of years is forty. The statute provides first degree murder is a class Y felony, Ark. Stat. Ann. § 41-1502(3) (Supp. 1985), and a person convicted of a class Y felony may be sentenced to a term of not less than ten years and not more than forty years, or life. The jury thus sentenced the appellant to the maximum determinate sentence for first degree murder, although it was not the ultimate maximum sentence, *i.e.*, life imprisonment.

■ The appellant argues, in his response to the appellee's request for rehearing, that we should grant a new trial so that a jury may set the sentence for second degree murder. We decline to do so, as we regard the maximum sentence to be supported by the evidence in the record, and as we said in *Collins* v. *State*, 261

Ark. 195, 548 S.W.2d 106 (1977):

> If the evidence proves insufficient to support a jury's verdict of a higher offense, the trial court may sentence the defendant for a lesser included offense where the evidence clearly shows the commission of the latter (and this court, in its discretion, may reduce the sentence to that prescribed for the lesser offense). *Caton* v. *State*, 252 Ark. 420, 479 S.W.2d 537 [1972]. This rule applies in murder cases as well as for other felonies. *Simpson* v. *State*, 56 Ark. 8, 19 S.W. 99 [1892]. [261 Ark. at 209, 548 S.W.2d at 114.]

The sentence has been reduced to one within the range prescribed for second degree murder, and we find that sentence to be justified by the evidence in the record.

Rehearing denied.

HICKMAN, HAYS, and GLAZE, JJ., would grant.