

# ARKANSAS COURT OF APPEALS

DIVISION I
**No.** CR–15–46

| | |
|---|---|
| JOYCE RENE ROLLF<br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br>APPELLEE | **Opinion Delivered** September 30, 2015<br><br>APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, FOURTH DIVISION<br>[NO. CR-12-3861]<br><br>HONORABLE HERBERT T. WRIGHT, JUDGE<br><br>AFFIRMED |

## BRANDON J. HARRISON, Judge

Joyce Rene Rollf was convicted during a 2014 bench trial of first-degree murder, abuse of a corpse, and tampering with physical evidence. The circuit court sentenced Rollf to thirty years' imprisonment for murder, ten years for abusing a corpse, and six years for tampering with physical evidence related to the death of James Heath—and ordered the sentences to run consecutively. Here, Rollf argues only that the State produced insufficient evidence to support the first-degree-murder conviction. We disagree and affirm the conviction.

### I. *Trial Testimony*

Because Rollf challenges the sufficiency of the evidence, and differing accounts of James Heath's death were presented during trial, a detailed account of the trial testimony is

necessary.    Taylor Arnold testified that he lived with Rollf on Centennial Road in September 2012.    According to Arnold, on September 15, he, Rollf (the defendant), Heath (the victim), and William Null (Rollf's boyfriend) were getting high on methamphetamine inside Rollf's trailer.    Rollf left the room, and Arnold heard "No, Rene, no," "a metal baseball bat hitting something," and a "ting noise."    A "scuffle" and "fighting" occurred, and Arnold saw Rollf hitting Heath with a bat.    At one point, two more people—John and Jody Posey—arrived at the residence.    Arnold said that when he came out of the bedroom, Heath was dead in the hallway; and Rollf and Jody Posey had blood on them.    Arnold told the court that "Rene killed James Heath," and that Rollf was mad at Heath because Heath had told Rollf's parents about her methamphetamine use.    Arnold said that he helped Rollf burn bloody clothes, clean the trailer, and dispose of Heath's body because he was "scared she was gonna beat me with the bat and put me in a hole, too . . . because that's how she was."    Arnold denied that he saw anyone else in the trailer with the bat.    He said that Rollf later hid the bat in a cabinet.    Arnold agreed to testify during Rollf's trial in exchange for a probation recommendation.

Another account of events came from John Posey.    Posey testified that he came to Rollf's house on September 15 because Rollf had texted his wife Jody asking for help beating up a guy "who had snitched on her."    Posey first encountered Heath for a brief moment before Heath ran back into the house.    Posey then heard "the aluminum cling of a baseball bat" and, when he entered the home, saw Heath holding an aluminum bat in his right hand and a wooden cane in his left.    Rollf, in a rage, picked up a large knife.    Heath eventually dropped the bat, and Posey used the bat to knock Heath down.    Then,

according to Posey, Rollf started hitting Heath "all over" with the bat like "she's splitting wood." Posey explained that this went on for five or ten minutes with Heath getting up several times and trying to defend himself. When Heath tried to run out the front door Posey shoved him into the hallway. Heath then locked himself in the bathroom. Rollf kicked the bathroom door off its hinges, and Jody and Rollf started beating Heath. Posey said he prevented Rollf from using a knife, telling her "if you want to beat his ass, beat his ass, but you're not going in there with the knife." Rollf, without the bat, straddled Heath "trying to choke him and gouging his eyes and stuff like that" and Heath bit her. This, according to Posey, made Rollf more enraged, and Heath started screaming "Stop it, Rene, you're killing me." Rollf reportedly replied that she didn't care. A minute or two later Rene reported to John Posey that Heath was dead and "it was over."

When Rollf stepped into the master bedroom Posey said he looked down the hallway and saw his wife Jody standing on Heath's throat. Jody told John that she "thought she seen him [Heath] breathing." Heath was dead and had blood on his head and shoulder area, according to John Posey. At that point, Rollf's friend Justine Gainey and her boyfriend Mike arrived at the house, and, according to Posey, Rollf started to "bark" orders that "everybody is gonna help and nobody's gonna say nothing, or else they was next." The group eventually tied Heath's body to a door and carried him to a hole that Rollf had readied in an area directly behind her back fence.

On cross-examination, John Posey explained that Jody, who weighed 180 pounds, stood on Heath's neck for thirty seconds to a minute. Posey also said that he had "stepped on [Heath] myself" and that he heard Heath breathe. Posey stared at Heath for another

minute then stepped on his body again and felt Heath "take a deeper breath" inhaling and exhaling one time. It was also revealed that John Posey's testimony was also part of a plea arrangement.

Justine Gainey, Rollf's friend, testified that there was blood on the floors, walls, and hallway of Rollf's residence when she and her boyfriend arrived. Rollf was in her bedroom in boxer shorts and a bra with blood on her holding a bag of ice on her injured hand. According to Gainey, Heath was on the hallway floor, not moving, and his clothes were partially ripped off. Rollf sent Gainey to the store to buy bleach; but there was only enough money to buy cigarettes and gas, according to Gainey.

Pulaski County Sheriff Department Investigator Jeff Allison testified during trial that, on 26 October 2012, he went to Rollf's trailer to investigate Heath's disappearance, because it was then a missing-person case. Law enforcement had recovered Heath's van in Jacksonville in October and through a series of events and interviews had talked to Taylor Arnold. Arnold told the police that a body was buried behind Rollf's house. Investigator Allison testified that he was specifically watching Rollf's residence as law enforcement discovered Heath's body below a pile of debris. Officer Allison noticed that a woman opened the back door and quickly darted back inside; Rollf and two men then fled the residence. Rollf was arrested the next day in Pope County and cut her wrists while being pulled over by the police.

Rollf made a recorded statement to the police the day after her arrest. It was played during the State's case in chief. During her statement, Rollf told the police that John Posey had hit Heath on the head. Rollf also admitted hitting Heath, but she did not

remember what she had hit him with or why Heath ended up dead. She told the investigator, "I know I got a couple of blows in, but I didn't kill him."

Dr. Charles Kokes, a forensic medical examiner, testified that the official cause of Heath's death was blunt-force trauma to the head from an "oval shaped depressed skull fracture" measuring "about three quarters of an inch in length and five eights inch in width" and depressed inwards "by as much as an eighth of an inch." He ruled the death a homicide. In Dr. Kokes's expert opinion, "[a] injury of this type, if left untreated, would inevitably lead to death." The skull fracture was caused by a "hard object with a cylindrical shape. . . very consistent with something like an aluminum baseball bat." Dr. Kokes also testified that a person who strikes another person with a metal baseball bat could cause the type of injury Heath sustained. The location of the injury—the frontal part of the head—requires "the full force swing of a normal strength adult" swinging an object "roughly about as hard as they can" to make an indent. Dr. Kokes also said, "I believe the fracture is at least part of the cause of death. As mentioned before, a person who sustains this injury and none other will, in my estimation, die unless they get medical attention." Dr. Kokes explained that Heath's body had partially decomposed before the exam was done, and there was post-mortem animal activity. He concluded that the right larynx and hyoid bone were absent because of the animal activity.

On cross-examination, Dr. Kokes maintained that Heath's skull fracture was consistent with an injury from a baseball bat and not something like a ball-peen hammer. He also agreed that if the skull fracture was "the only injury that was sustained, that is, and the person receives prompt medical attention, it is a survivable injury."

On recross-examination, Dr. Kokes said that Heath's arterial system had decomposed when the autopsy was performed. Then defense counsel asked him this:

DEFENSE: So, if some, if some injury was caused to that by pressing on the carotid artery and that person died, you would not be able to give an opinion as to that. Is that correct?

DR. KOKES: No and yes. No, it's not there, but then again, when that phenomenon actually does occur, you can't tell it by looking at that tissue anyway.

DEFENSE: So you're saying he didn't die that way, right?

DR. KOKES: Well, what I can say and comment on is what is there, which is the blunt force head trauma. I can't rule in or out other sorts of trauma that may have taken place depending on where anatomically they are. But one need not invoke other trauma to explain his death.

Christopher Glaze with the Arkansas State Crime Laboratory testified that two DNA samples taken from an aluminum bat that the police had recovered from a cabinet in Rollf's house matched Heath's DNA profile. Another swab from the floorboard of the house matched Heath's DNA profile too.

Defense witness Robert Robins provided yet another version of the story. Robins was a high-school friend of Arnold who Arnold reportedly told about the murder. Robins said that Arnold told him they used a ball-peen hammer to hit Heath over the head and that Arnold had dug a shallow grave with a garden hoe. Arnold also told Robins that the ball-peen hammer was in the back of his red truck parked in front of Rollf's house.

At the close of the State's case and the close of all the evidence, Rollf moved for a directed verdict, arguing that the State did not prove she purposely caused Heath's death. The court denied the motions, and Rollf appeals.

## II. *Discussion*

A motion to dismiss made during a bench trial and a motion for a directed verdict during a jury trial challenge the sufficiency of the evidence. *See* Ark. R. Crim. P. 33.1 (2014). When a defendant challenges the sufficiency of the evidence that led to a conviction, the evidence is viewed in the light most favorable to the State. *Stewart v. State*, 362 Ark. 400, 208 S.W.3d 768 (2005). Only evidence supporting the verdict will be considered. *Id.* The test for determining the sufficiency of the evidence is whether the verdict is supported by substantial evidence, direct or circumstantial. *Id.* Whether evidence is direct or circumstantial, it must meet the requirements of substantiality. *Id.* Substantial evidence is evidence forceful enough to compel the fact-finder to make a conclusion one way or the other without resorting to speculation or conjecture. *Id.* Direct evidence is evidence that proves a fact without resorting to inference. *Id.* When circumstantial evidence alone is relied upon, it must exclude every other reasonable hypothesis than that of the guilt of the accused, or it does not amount to substantial evidence. *Id.*

A person commits murder in the first degree if, with a purpose of causing the death of another person, the person causes the death of another person. Ark. Code Ann. § 5-10-102(a) (Repl. 2013). The State must prove each element of first-degree murder beyond a reasonable doubt. *See Victor v. Nebraska*, 511 U.S. 1 (1994).


A.  Causation

Rollf argues that the State failed to prove she was the one who caused Heath's death because the evidence supports that multiple people caused his death.  According to Rollf, Heath could have received the fatal head injury from three different assailants or he could have died from pressure on his neck.  Rollf points out that Dr. Kokes testified that Heath's death resulted from blunt head trauma, but he could not identify which object caused the trauma.  There was also testimony that at least two people stood on Heath's body and that Jody Posey had put her body weight on Heath's neck for at least thirty seconds.  Dr. Kokes said that death from pressure to the neck was possible and could not be excluded.

> Ark. Code Ann. § 5-2-205 (Repl. 2013) provides:
>
> Causation may be found when the result would not have occurred but for the conduct of the defendant operating either alone or concurrently with another cause unless:
>
> > (1)     The concurrent cause was clearly sufficient to produce the result; and
> >
> > (2)     The conduct of the defendant was clearly insufficient to produce the result

The Arkansas Supreme Court has interpreted this statute to mean "where there are concurrent causes of death, conduct which hastens or contributes to a person's death is a cause of death."  *Cox v. State*, 305 Ark. 244, 248, 808 S.W.2d 306, 309 (1991); *Porter v. State*, 308 Ark. 137, 145, 823 S.W.2d 846, 850 (1992) (upholding first-degree-murder conviction when removal of life support system was concurrent cause of child's death, but the injury to the child's brain caused by the defendant contributed to child's death); *see also*

*Burrage v. United States*, __ U.S. __, __, 134 S. Ct. 881, 891 (2014) (noting that Arkansas expressly departs from a traditional but-for, cause-in-fact analysis).

We hold that the State produced sufficient evidence that Rollf caused Heath's death. Here, although the expert testimony left open possible concurrent causes for Heath's death, the skull injury clearly contributed to his death. Arnold and Posey testified that Rollf was the only person to hit Heath with the aluminum bat, and Rollf admitted to striking Heath. Heath's skull injury—which the forensic examiner said would result in death without treatment—was consistent with being hit with a baseball bat; and Heath's blood was found on the baseball bat. The trier of fact, in this case the circuit court, must resolve questions of conflicting testimony and inconsistent evidence. *See Williams v. State*, 2015 Ark. 316. It was entitled to credit the State's expert and its witnesses' account of Heath's death over Rollf's. *See Barrett v. State*, 354 Ark. 187, 195, 119 S.W.3d 485, 490 (2003). Substantial evidence supports the court's conclusion that Rollf's actions caused Heath's death.

### B. Mental State

Next, Rollf argues that the State failed to prove that she acted with a purpose to cause Heath's death. She argues that while she intended to have an altercation with Heath, she did not have a purpose to cause his death. She cites *Midgett v. State*, 292 Ark. 278, 729 S.W.2d 410 (1987), in support of her argument. We reject Rollf's reliance on the *Midgett* case. When *Midgett* was decided the first-degree-murder statute required the State to prove premeditation and deliberation. One month after *Midgett* was decided, however, the Arkansas General Assembly changed the statute. *See Davis v. State*, 325 Ark.

96, 105, 925 S.W.2d 768, 773 (1996). So the *Midgett* case has been overruled by statute and has no role in this case.

Under Arkansas law, a person acts purposely with respect to his or her conduct or a result of his or her conduct when it is the person's conscious object to engage in conduct of that nature or to cause the result. Ark. Code Ann. § 5-2-202(1) (Repl. 2013). A criminal defendant's intent or state of mind is seldom capable of proof by direct evidence and must usually be inferred from the circumstances of the crime. *See Davis v. State*, 2009 Ark. 478, 348 S.W.3d 553. Efforts to conceal a crime, as well as lying to friends and police about one's involvement in a killing, can be considered evidence of consciousness of guilt. *Williams v. State*, 2015 Ark. 316.

We hold that the State produced sufficient evidence that Rollf purposely killed Heath. John Posey's testimony supports the conclusion that it was Rollf's conscious object to end Heath's life. Recall his testimony that, after Rollf had beaten Heath with an aluminum bat for several minutes, Heath cried "Stop it, Rene, you're killing me," that Rollf did not stop, and that she was enraged. Furthermore, Rollf's efforts to conceal the crime by hiding the bat, burning bloody clothes, cleaning the trailer, and burying Heath's body beneath a pile of debris also show a purposeful mental state. *See Williams*, *supra*. And Rollf's decision to flee the moment investigators found Heath's body on her property, and her subsequent suicide attempt, reasonably support an inference of guilt. *See Branscum v. State*, 345 Ark. 21, 29, 43 S.W.3d 148, 154 (2001) (flight from the place where a crime has been committed may be considered as evidence of guilt).

### III.  *Conclusion*

Considering all the bench-trial testimony and the credibility determinations that had to be made, the circuit court sitting as the trier–of–fact could have reasonably concluded that Rollf purposely caused Heath's death.  The first-degree-murder conviction is therefore affirmed.

Affirmed.

ABRAMSON and BROWN, JJ., agree.

*Cross, Gunter, Witherspoon & Galchus, P.C.*, by: *Misty Wilson Borkowski*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Brooke Jackson*, Ass't Att'y Gen., for appellee.