STATE of Arkansas *v.* Gary D. TIPTON

CR 89-49                                        779 S.W.2d 138

Supreme Court of Arkansas
Opinion delivered October 30, 1989
[Rehearing denied December 4, 1989.*]

*Compton, Prewett, Thomas & Hickey, P.A.*, for appellant.

*Steve Clark*, Att'y Gen., by: *Clint Miller*, Asst Att'y Gen., for appellee.

JACK HOLT, JR., Chief Justice. The trial court dismissed with prejudice the second degree murder charge pending against appellee Gary D. Tipton because the State failed to bring Tipton to trial within the twelve-month period set forth in Ark. R. Crim. P. 28.1(c). The State attempts to appeal from the trial court's order pursuant to Ark. R. Crim. P. 36.10, alleging that jurisdiction lies in this court under Ark. Sup. Ct. R. 29(1)(c). We find

---

*Hickman, Hays, and Glaze, JJ., would grant rehearing.

that under the circumstances the State has no right to appeal under Rule 36.10 and, therefore, we dismiss the appeal.

■ As a general rule, the State has no right to appeal except as conferred by constitution or rule of criminal procedure. *State v. Hurst*, 296 Ark. 132, 752 S.W.2d 749 (1988). Ark. R. Crim. P. 36.10(b) and (c) authorizes the State to appeal following either a misdemeanor or felony prosecution if "the attorney general, on inspecting the trial record, is satisfied that error has been committed to the prejudice of the state, and *the correct and uniform administration of the criminal law requires review by the Supreme Court*." (Emphasis added.)

■ It is clear that the State's point for reversal that the trial court erred in dismissing the charge and in denying its motion for an excludable period does not involve the correct and uniform administration of the criminal law, a prerequisite for appeal under Rule 36.10(b) and (c). It simply concerns application of our speedy trial rules. Accordingly, the State cannot appeal from the trial court's order.

Appeal dismissed.

PURTLE, DUDLEY, and NEWBERN, JJ., concur.

GLAZE, J., concurs in part and dissents in part.

HICKMAN AND HAYS, JJ., dissent.

JOHN I. PURTLE, Justice, concurring. Justice Hickman's dissenting and Justice Glaze's concurring opinions display a failure to fully appreciate the purpose behind the speedy trial rules. These rules were not established for the benefit of criminals. They were designed for the benefit of accused persons in particular and society in general. They are most beneficial to those unfortunate innocent persons who are finally found not guilty at trial or who have had their indictments or informations dismissed after the state determines that charges should never have been filed. The rules most directly affect people who have not been convicted and may never be convicted. They also accelerate the entry into prison of those who are tried and found guilty.

The societal interest in speedy trials must not be underestimated. The backlog of persons awaiting trial aggravates the already grievous problem of this nation's overcrowded prison

systems. Holding an accused in prison awaiting trial not only contributes to the expenses of overcrowding, it also exposes persons being held for trial to conditions which have "a destructive effect on human character and makes rehabilitation of the individual offender much more difficult." *Barker v. Wingo*, 407 U.S. 514 (1972). Prior to the constitutional adoption of the speedy trial requirement, persons were being held without trial for months or even years. The Sixth Amendment to the United States Constitution states:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the state and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defense.

See also the dissenting opinion by Justice Hickman, in which Justices Hays and Glaze joined, in *Asher v. State*, 300 Ark. 57, 776 S.W.2d 816 (1989).

The Sixth Amendment was adopted in order to end the practice of holding persons in jail without trial for long periods of time. It worked for a while, but overcrowded dockets and delaying tactics by the accused and the state soon allowed courts to resume the unjust practice for their convenience and that of the state. The courts could not or would not abide by the speedy trial rules mandated by the United States Constitution. The speedy trial rules contained in the Arkansas Rules of Criminal Procedure were the result of legislative and societal demands. We are obligated to abide by our own rules.

Time has proven that the state will not perform its function to oversee speedy trials in the absence of written rules and precedent. Unbridled discretion by the state in such matters could lead to absurdities. A person accused of a misdemeanor could be held for a year without trial, while a minor felony could result in a life sentence. Unless we observe the rules we have promulgated, jails and prisons will surely become even more overcrowded, and the taxpayer's burden will certainly be in-

creased — and for no good reason. Society will indeed suffer. Most importantly, incarcerated persons will be forced to endure unwarranted terms of imprisonment without benefit of trial.

There are many negative side effects of holding persons accused of crimes for long periods of time without trial: The families of wage earners suffer; the public must support dependents of prisoners who are later determined to have been falsely accused; society forfeits the contributions of potentially productive citizens; taxpayers must bear the increased costs of lengthier holding time and additional prison space; and prisoners unjustly and needlessly held for so long a time suffer unmentionable harm. Finally, the very purpose of a trial — the search for truth — is defeated by undue delay. Witnesses disappear, evidence vanishes, and memory fades.

The United States Supreme Court held in *Kloppfer* v. *North Carolina*, 386 U.S. 213 (1967), that the right to a speedy trial is "fundamental" and is imposed on the state by the Due Process Clause of the Fourteenth Amendment. If we are to remain a nation of laws, it is imperative that we abide by them.

Dismissal is a severe penalty for failure to bring an accused to timely trial. However, it is the *only* available remedy. After all, the state commenced the proceedings and has the duty and obligation to those accused and other citizens to bring the matter to trial. See *Stephens* v. *State*, 295 Ark. 541, 750 S.W.2d 52 (1988).

There are valid reasons behind the speedy trial rules; *i.e.*, the United States Constitution. The guarantees contained in the Sixth Amendment stand between the accused and what Shakespeare's Hamlet listed as one of life's insupportable evils — "the law's delay."

DAVID NEWBERN, Justice, concurring. By per curiam order of July 13, 1987, with no dissenting vote, we amended Ark. R. Crim. P. 28.1(c) to state:

> Any defendant charged after October 1, 1987, in circuit court and held to bail, or otherwise lawfully set at liberty, including released from incarceration pursuant to subsection (a) hereof, shall be entitled to have the charge dismissed with an absolute bar to prosecution if not

brought to trial within twelve (12) months from the time provided in Rule 28.2, excluding only such periods of necessary delay as are authorized in Rule 28.3.

Previously, this subsection of the rule had provided for dismissal under the stated conditions if the defendant were not brought to trial within 18 months. We were convinced the state could and should bring defendants to trial within a year.

The change in the rule seems, as could have been expected, to have brought with it more cases in which we and the court of appeals are asked to review determinations of "excluded periods." I have no doubt that each member of this court remains receptive to argument that the period should not have been shortened. Perhaps we will be convinced by someone, such as our Committee on Rules of Pleading, Practice, and Procedure (Criminal), if its members are so inclined, that we should return to the 18-month standard.

My reason for writing this concurring opinion is not to disagree with any aspect of the court's opinion in this case. It is, rather, to address the issue raised by Justice Hickman's dissenting opinion and Justice Glaze's concurring opinion in this case and Justice Hickman's dissenting opinion in *Asher* v. *State*, 300 Ark. 57, 776 S.W.2d 816 (1989). The suggestion of those opinions seems to me to be that we should have no absolute limit as a speedy trial rule but should consider factors such as whether the defendant made a demand for a speedy trial and whether he was prejudiced by his alleged denial of a speedy trial. Such a change would be far more radical than a change back to the 18-months provision.

The primer on the subject of the "modern" constitutional right to a speedy trial is the opinion of Mr. Justice Powell written for the Supreme Court in *Barker* v. *Wingo*, 407 U.S. 514 (1972). In that opinion, the Supreme Court did indeed address matters such as demand, waiver, and prejudice in deciding whether a defendant's constitutional right to a speedy trial was violated. However, it was made clear that the court was not writing an opinion applicable to those states, such as Arkansas, which had adopted a rule narrowly, and definitely, establishing the period in which a defendant must be tried or have the case against him dismissed.

It was recognized in the opinion that there is far more at stake in the resolution of the speedy trial issue than the Sixth Amendment's guarantee.

> The right to a speedy trial is generically different from any of the other rights enshrined in the Constitution for the protection of the accused. In addition to the general concern that all accused persons be treated according to decent and fair procedures, there is a societal interest in providing a speedy trial which exists separate from, and at times in opposition to, the interests of the accused. The inability of courts to provide a prompt trial has contributed to a large backlog of cases in urban courts which, among other things, enables defendants to negotiate more effectively for pleas of guilty to lesser offenses and otherwise manipulate the system. In addition, persons released on bond for lengthy periods awaiting trial have an opportunity to commit other crimes. It must be of little comfort to the residents of Christian County, Kentucky, to know that Barker was at large on bail for over four years while accused of a vicious and brutal murder of which he was ultimately convicted. Moreover, the longer an accused is free awaiting trial, the more tempting becomes his opportunity to jump bail and escape. Finally, delay between arrest and punishment may have a detrimental effect on rehabilitation. [407 U.S. at 519-520, footnotes omitted]

It was interests such as these I thought we were considering when we reduced the period from 18 to 12 months, and which I have always assumed to be part of the judgment which must be made if we are to impose a speedy trial limit.

After noting that the speedy trial right is "more vague" than other procedural concepts, the Supreme Court recognized that a number of states have adopted speedy trial deadlines like ours, and that the American Bar Association recommended it as a solution to the problem. With respect to the possibility that the Supreme Court adopt such a standard, Mr. Justice Powell wrote:

> But such a result would require this Court to engage in legislative or rulemaking activity, rather than in the adjudicative process to which we should confine our efforts.

We do not establish procedural rules for the States, except when mandated by the Constitution. We find no constitutional basis for holding that the speedy trial right can be quantified into a specified number of days or months. The States, of course, are free to prescribe a reasonable period consistent with constitutional standards, but our approach must be less precise. [407 U.S. at 523]

Thus, while the federal courts and the Supreme Court are limited to applying the Sixth Amendment imprecisely, and must include in the decisional process the usual balancing factors such as demand, waiver, and prejudice, it is clear that the decision in *Barker* v. *Wingo* does not require us to do likewise. In footnote 29, 407 U.S. at 530, it is stated, "[n]othing we have said should be interpreted as disapproving a presumptive rule adopted by a court in the exercise of its supervisory powers which establishes a fixed time period within which cases must normally be brought."

In the dissenting and concurring opinions of my colleagues, to which I referred above, there seems to be a suggestion that we have gone astray in our efforts to protect the right of an accused to a speedy trial. No consideration is given to the other relevant interests of society which have been recognized by the Supreme Court and which we should recognize too. If the suggestion is that we revoke our criminal procedure rule and put ourselves back in the position of the Supreme Court with all the vagueness and imprecision that would carry with it, and if a majority of this court should choose to follow such a suggestion in some future order, then so be it. I think it would be a mistake because of the considerations recited by Justice Powell and because it would provide another fertile field for litigation and make the speedy trial issue much more difficult to decide in the courts of this state.

DARRELL HICKMAN, Justice, dissenting. It is not often that a justice has to defend a dissenting opinion, but that is what I am called upon to do. Three concurring opinions filed in this case are actually in response to a dissent three of us made in *Asher* v. *State*, 300 Ark. 57, 776 S.W.2d 816 (1989) (Hickman, J., dissenting). So the reader who is interested in this discourse should probably read that dissenting opinion first. It best states my views regarding the speedy trial rule.

Before responding to my colleagues, it is necessary first to see

what occurred in this case. The trial judge dismissed murder charges against Tipton when twelve months had elapsed without a trial. The state appeals that ruling and the majority dismisses the appeal as a matter not prejudicial to the state and the uniform administration of justice. Nothing could be more wrong as demonstrated by the sharp dispute we have over our so-called speedy trial rule, its application and its future.

The facts of the case are unique. We do not know exactly why the trial judge dismissed the charge. No memorandum was entered in this case as there was in *Key* v. *State*, 300 Ark. 66, 776 S.W.2d 820 (1989), which would explain what happened. The record is simply silent on any argument made to the court or the reason for the court's decision.

The state's motion for a continuance was granted in November of 1988 evidently because a key prosecution witness could not attend the trial on the scheduled date. This was a valid reason for delay. The prosecution represented the motion for a continuance as a joint motion, which was not the case. In an October 27 letter to the deputy prosecutor, the defense counsel refused to join the motion, while admitting that it might be to Tipton's advantage that the doctor not appear. Whether the prosecution's misrepresentation was intentional or otherwise is irrelevant to the state's right to a continuance and to an excludable period for the witness' unavailability. *See Barker* v. *Wingo*, 407 U.S. 514, 531 (1972) ("a valid reason, such as a missing witness, should serve to justify appropriate delay.")

Just prior to Tipton's January, 1989, motion to dismiss on speedy trial grounds, the state moved that the period from November 1988 to the March 1989 term of court be excluded from the speedy trial computation. The state's motion also mentioned the illness of the presiding judge which had evidently caused some docket congestion. Perhaps the trial judge felt that since we have not recognized illness of the judge as a good reason for delay, it could not be considered in this case. *See Novak* v. *State*, 294 Ark. 120, 741 S.W.2d 243 (1987). Even so, the judge did not address those questions; he simply dismissed the charge without explanation.

Since the record shows nothing to dispute the state's claim that the witness was critical and unavailable, I find no basis for

dismissal. If the deputy prosecutor misled the court, he should be disciplined. Regardless, the defendant should have to answer to the state for taking a life. He did not ask for a speedy trial, nor has he demonstrated any prejudice. The people are entitled to their day in court.

My colleagues, in their concurring opinions, make a good deal of noise and smoke but miss the point. The question is not whether we should have a speedy trial rule, but whether it should make sense. They are content to continue upholding a rule and our decisions interpreting that rule which create a legal trick allowing criminal defendants to avoid trial. They walk free on a genuine legal technicality. Ironically, the rule is called the speedy trial rule, and a defendant can avoid trial by simply laying low for a year and then crying "speedy trial" all the time, of course, not wanting a speedy trial. That is the perversion of the law which I addressed in the dissent in the *Asher* case.

The rule is defended because we have had it for some time, because the United States Supreme Court does not prohibit our rule, and because it makes trial judges and prosecutors pay attention to their business. That concedes it has little relation to the constitutional principle at issue. It is suggested that it would be too difficult to draft a rule to discipline prosecutors and trial judges who neglect their duties, and the best way to prompt them is to free criminals. Nonsense. This court loves to make rules. It makes criminal rules, civil rules, appellate rules, supreme court rules, trial court rules, ethical rules for lawyers and judges, rules for court reporters, rules for bar admission, legal specialization, legal education, and rules of evidence. Am I to believe that we cannot draft and enforce a rule to make judges and prosecutors move cases?

The question is not whether we should have a rule, but whether it should have any sensible relation to the constitutional right to a speedy trial. Should a defendant, if he wants a speedy trial, be made to ask at some time for a speedy trial in order to avail himself of that right? The concurring judges say no. Should a defendant merely have to show how he might be prejudiced and indeed denied any of his rights by the fact he has not been promptly brought to trial? The concurring justices say no. That is the part of the rule and our decisions that make no sense.

In *Barker* v. *Wingo, supra,* the Supreme Court specifically addressed the matters of prejudice and a defendant's obligation to assert his right:

> We think the better rule is that the defendant's assertion of or failure to assert his right to a speedy trial is one of the factors to be considered in an inquiry into the deprivation of the right.

Regarding prejudice to the defendant, the court said:

> A fourth factor is prejudice . . . assessed in light of the interests of the defendant which the speedy trial right was designed to protect.

The old saw that it might not be a good rule but it has been around for a long time, and we unanimously approved the change, is added to the arguments to defend the rule. The principle of *stare decisis* is no excuse for upholding a decision that is indefensible. Any time we find we have made a mistake we should correct it at the first opportunity. Who would be prejudiced if we closed this legal loophole and removed this legal trick? No person will be denied a speedy trial if he asks for it; no charges will remain if he is denied a fair trial because of delay. Isn't that what the constitution means?

This court has not been averse to overruling decisions that have stood for many years. Established precedent was rejected in *Southern Farm Bureau Life Ins. Co.* v. *Cowger,* 295 Ark. 250, 748 S.W.2d 332 (1988); *Midgett* v. *State,* 292 Ark. 278, 729 S.W.2d 410 (1987); *Walker* v. *Arkansas Dept. of Human Services,* 291 Ark. 43, 722 S.W.2d 558 (1987); and *City of Hot Springs* v. *Creviston,* 288 Ark. 286, 705 S.W.2d 415 (1986). It has never been adverse to changing rules; we do it all the time. *See Whitmore* v. *State,* 299 Ark. 55, 771 S.W.2d 266 (1989). The opportunity to overrule precedent was declined in *Southwest Ark. Communications Inc.* v. *Arrington,* 296 Ark. 141, 753 S.W.2d 267 (1988); *Davis* v. *Cox,* 268 Ark. 78, 593 S.W.2d 180 (1980).

I can only suppose my fellow justices are sincere in defending a policy and a rule because they deem it right and just. I happen to disagree.

TOM GLAZE, Justice, dissenting in part; concurring in part. I agree with the majority court that this court is mandated to affirm the dismissal of the appellant's case, but I am firmly convinced this court should change its speedy trial rule so future criminal charges cannot be dismissed unless a defendant, at the very least, requests a trial and can show some prejudice. In this respect, I fully agree with Justice Hickman, and indeed, joined his dissent addressing this issue in *Asher* v. *State*, 300 Ark. 57, 776 S.W.2d 816 (1989). Justice Hickman's dissent in *Asher* states my views, so I need not reiterate them here. Suffice it to say, this court, in adopting its Rules of Criminal Procedure in 1976, simply went too far (or perhaps failed to go far enough) when it promulgated a speedy trial rule that omitted reference to two of four factors the Supreme Court said were necessary when considering whether a defendant has been denied a speedy trial. *See Barker* v. *Wingo*, 407 U.S. 514 (1972). Those two factors were that a defendant must assert his right to a speedy trial and be prejudiced by having been denied one.

I join with the majority here because the speedy trial standard and this court's cases interpreting it have been in place for thirteen years, and defendants, trial bench and the bar should be apprised if this court intends to change its view on this important subject. Aside from when changes in Rule 28 should take effect, when we abolished Criminal Procedure Rule 37 and its post-conviction remedies, we allowed persons convicted and sentenced during Rule 37's existence to proceed under that Rule. To do so merely recognizes an accused's right to rely on the Rule and case precedents interpreting it until that law was abolished. *See Whitmore* v. *State*, 299 Ark. 55, 771 S.W.2d 266 (1989). The same situation exists here. If the court chose to modify its Speedy Trial Rule, A.R.Cr.P. Rule 28, the defendants (including the appellant here), who have relied on Rule 28 as it was previously worded, would be entitled to its benefits.

In conclusion, it is my opinion that common sense and logic warrant a change in our Speedy Trial Rule, and one's sense of justice — when considering the rights of both the accused and the people of this state — demands it. For these and the other reasons given in Justice Hickman's dissent in *Asher*, my stance in future cases will be that a defendant must assert his speedy trial right and show prejudice before his or her case can be dismissed. My

hope is that my colleagues, who do not now agree to changing Rule 28 at this time, will reconsider and change their views in the near future.

In the present case, I would add that appellant's counsel informed the deputy prosecutor in this case that counsel was ready to go forward with the trial, as scheduled, on November 4, 1988.[1] At least, in this case, the defendant did appear to pursue his right to a speedy trial, but was denied it. For whatever reason not made clear in the record in this appeal, the deputy prosecutor misrepresented to the trial judge that the defendant's counsel joined in a continuance of the November 4, 1988, trial. In addition, the deputy prosecutor apparently made no effort to obtain a continuance on other grounds. In any event, whatever delay that occurred in this case seems attributable solely to the state and not the defendant. Defendant asserted his right to trial and failed to receive it. The trial court's decision must be affirmed.[2]

HAYS and GLAZE, JJ., join in the dissent.

---

[1] Counsel's letter, which sets out the events and counsel's communication with the deputy prosecutor is attached.

[2] The majority court dismisses this appeal without discussing the merits of the speedy trial issues. I differ with the court. I would resolve the arguments in the appeal but affirm the lower court based upon the reasons stated in my opinion.

LAW OFFICES
## COMPTON, PREWETT, THOMAS & HICKEY, P.A.
P.O. DRAWER 1917
423 NORTH WASHINGTON
EL DORADO, ARKANSAS 71731
(501) 862-3478

ROBERT C. COMPTON
WM. I. PREWETT
FLOYD M. THOMAS, JR.
JOSEPH HICKEY

October 28, 1988

CAROL CRAFTON ANTHONY
CATHLEEN V. COMPTON
H.Y. ROWE—OF COUNSEL
JERRI L. AGERTON—PARALEGAL

TELECOPIER NO. (501) 862-7228

HAND DELIVERED

John Lightfoot
Prosecuting Attorney's Office
Union County Courthouse
El Dorado, Arkansas  71730

      Re:  State of Arkansas v. Gary D. Tipton
           Union Circuit No. CR-88-9

John:

I have your letter of October 27 with the proposed Motion for Continuance.

John, I cannot join with you in this Motion at this time.

First, in my ongoing trial in Judge Harris' United States District Court, all parties are now contemplating that the matter will be submitted to the jury by Thursday, November 3. Of course, this might not happen. However, I would then be able to try this case on Friday, November 4, as presently scheduled.

Also, I have great problems with the week of Monday, November 14. I have rescheduled complex CPA discovery depositions for Tuesday and Wednesday, November 15 and 16, and it would be extremely difficult to reschedule these depositions again. Since we last talked, I have had depositions scheduled in a medical malpractice case, now scheduled for trial in Conway in December, for Thursday, November 17. Also, since we last talked, I have had a hearing set in the United States District Court for Friday, November 18.

I am not unmindful that it might very well be to the advantage of my client for Dr. Bennett Preston not to appear and testify.

COMPTON, PREWETT, THOMAS & HICKEY, P.A.

Mr. John Lightfoot
October 28, 1988
Page 2

Also, when we last talked, you indicated that the State might entertain a plea agreement other than the previous offer.

Taking all of the facts and circumstances of this case into consideration, and particularly because of the evidence that will be presented against my client (this type plea has a name arising from some particular case but I can't remember it), Mr. Tipton would agree to enter a plea to manslaughter with a sentence of five years probation.

Due to the time element, I am causing this letter to be hand delivered and I believe that I will be out of Court early this afternoon in the event that you wish to talk further about this matter.

Take care.