The Honorable Wayne Nichols State Representative 304 Poinsett Street Marked Tree, AR 72365-2237
Dear Representative Nichols:
I am writing in response to your request for an opinion concerningAct 1188 of 2003, which amended A.C.A. § 16-17-129 to include counties among those political subdivisions authorized to levy an additional municipal court (now district court) fine for prisoner expense.[1] You state that Poinsett County has passed an ordinance imposing the five-dollar fine on all arrests in the county. And you have asked:
 Does this include the city fines imposed in the city limits or just those arrests made outside the city limits? If the answer is "yes," they collect on all fines in the county, can each city pass an ordinance imposing an additional five dollar fine to be used in their jail upkeep? If so, can cities impose the five-dollar fine on all tickets that go through their court system or only the city fines imposed in the city limits?
RESPONSE
Although the plain language suggests that the additional $5.00 fine levied by the county ordinance is collected from each defendant regardless of where the arrest occurred, legislative clarification or a judicial ruling may be necessary to definitively decide the matter. I am thus unable to conclusively opine in response to your first question. It is my opinion in response to your second and third questions that the cities' authority to levy and collect the additional fine by ordinance pursuant to A.C.A. 16-17-129 is separate and apart from that of the county; but the application of a city ordinance to so-called "county cases" may remain uncertain absent legislative or judicial clarification.
The answer to these questions turns on the language of A.C.A. § 16-17-129
(a), as amended by Act 1188 of 2003, which states:
 In addition to all fines now or as may hereafter provided by law, the governing body of each city of the first class, city of the second class, incorporated town, and county in this state may by ordinance levy and collect an additional fine not to exceed five dollars ($5.00) from each defendant who pleads guilty or nolo contendere to, is found guilty of, or forfeits bond for any misdemeanor or traffic violation in the city court of the city, town, or county, or in the district court for the district in which the city or town is located.
A.C.A. § 16-17-129 (a) (Supp. 2003).[2]
One approach to this language is to conclude, based on the so-called "plain meaning rule," that the county collects the additional fine from each defendant for any misdemeanor or traffic violation, regardless of whether the violation occurred in the unincorporated area of the county. This would reasonably seem to follow from the language authorizing the county to levy and collect the fine "from each defendant who pleadsguilty or nolo contendere to, is found guilty of, or forfeits bond forany misdemeanor or traffic violation in the city court of the city, town, or county, or in the district court for the district in which the city or town is located." (Emphasis added). This language would not appear to limit the county ordinance's application to those arrests made outside city limits. And according to the "plain meaning rule," a statute that is clear and unambiguous must be given its plain meaning, without resorting to rules of construction or external aids for determining legislative intent. See, e.g., Southwest Arkansas Communications, Inc.v. Arrington, 296 Ark. 141, 753 S.W.2d 267 (1988); Bishop v. LinkwayStores, Inc., 280 Ark. 106, 655 S.W.2d 426 (1983).
I am frankly uncertain, however, whether the court would view A.C.A.16-17-129 (a) as unambiguous, or whether it would otherwise decide that it must interpret the statute to determine intent. One legal commentator has suggested in this regard that the Arkansas Supreme Court has been inconsistent in its approach to statutory interpretation, and that "the plain meaning rule will bow to the court's interpretation of intent — even where the language is clear and unambiguous." J. Cooper, The PlainMeaning Rule in Arkansas After Foster v. Jefferson County Quorum Court,
49 Ark. L. Rev. 559, 571 (1996). The commentator draws this conclusion from cases that discuss intent or purpose where the language is unambiguous, summarizing the contradiction as follows:
 Case precedents in Arkansas [footnote omitted] provide examples of the different approaches which can be taken in constitutional and statutory construction. In some cases, the court has adhered to the plain meaning rule to justify its holding, stating that the plain meaning rule left no room for construction. [Footnote omitted.] In other cases, the court has gone outside the language of the provision or statute in question, and determined its interpretation of intent through the use of external sources. [Footnote omitted.] In the latter group of cases, the court has held that, even if the wording of the provision or statute were clear and unambiguous, it could consider external evidence if the language contradicted the court's interpretation of intent. [Footnote omitted.]
Id. at 584.
This "flexibility" in statutory interpretation (id. at 585) makes it difficult to predict with certainty the proper approach to A.C.A.16-17-129 (a). On the one hand, it might be concluded that the statute unambiguously authorizes the county to levy and collect the additional $5.00 fine from each defendant for any misdemeanor or traffic violation in district court, there being no language limiting the county ordinance's applicability depending upon where the arrest was made. If the statutory language is unambiguous, it is inappropriate to consider matters outside the language itself in interpreting the meaning of that language. The primary concern in that instance is with what the document says and not what its drafters may have intended. Mourot v. ArkansasBoard of Dispensing Opticians, 285 Ark. 128, 685 S.W.2d 502 (1985).
On the other hand, if the statute must be interpreted, established rules of statutory construction support reading its provisions as a whole and with reference to other provisions relating to the same subject matter, bearing in mind its object and purpose. See generally Chism v. Phelps,228 Ark. 936, 311 S.W.2d 297 (1958). In this regard, it must be noted that ordinarily, a county does not receive fines that are assessed in district court in cases of misdemeanor or traffic violations committed within the corporate limits of a city. See A.C.A. § 16-17-707, as amended by Act 1765 of 2003, § 22 (the general statute governing disbursement of fines based on different classes of accounts according to identity of arresting officer and where the arrest occurred; e.g., city generally retains proceeds from fines assessed in district court for misdemeanors under state law or local ordinance committed within the city). The accounting law that governs disbursements of fine revenues[3] also reflects the distinction between "city cases" and "county cases," presumably based upon the different classes of accounts established under A.C.A. 16-17-707, supra. See A.C.A. 16-10-206 (f) (Repl. 1999) (requiring the clerk to keep "separate court dockets, one (1) for city cases and one (1) for county cases[;]" and 16-17-209 (1) (G) ("clerk may maintain separate bank accounts for city cases and for county cases;") and (3) (A) (i) (Supp. 2003) ("clerk shall maintain a separate cash receipts and disbursements journal for city cases and county cases.")
Section 16-17-129 (a) may be susceptible to more than one interpretation when consideration is given to these other provisions governing the disbursement of fine proceeds. It might be contended in light of these provisions that the legislature only intended for the additional county fine to apply to "county cases,'' according to the general statutory scheme governing disbursement of fine proceeds. Further support for this interpretation may be found in Section 16-17-129's requirement that the fine proceeds "shall be used exclusively to help defray the cost of incarcerating . . . county prisoners, including the construction and maintenance of the . . . county jail. . . ." A.C.A. 16-17-129 (b) (Supp. 2003). Although the term "county prisoner" is not defined, the purpose of funding county prisoner expense may lend credence to the argument that the county fine is to be collected in cases on the county docket, and not in "city cases." This would also resolve the accounting difficulties that will otherwise arise if the county fine is collected in cases on the city docket, as all sums arising from that class of accounts must be paid into the city treasury pursuant to A.C.A. 16-17-707 (b) (1).
In sum, while I believe the "plain meaning rule" may be cited to support the county collecting the additional $5.00 fine from each defendant regardless of the arresting officer or location of the offense, I am uncertain whether the plain meaning will be controlling, given the arguable inconsistency in the court's approach to the rule. Case precedent on statutory construction compels me to alert you to the possibility that the statute will be construed to limit the fine to county cases, i.e., those cases in which the county would otherwise receive fine proceeds in accordance with A.C.A. 16-17-707. I cannot predict with certainty the resolution of this issue. Resort to the courts may be necessary to definitively decide the matter.
With regard to your second and third questions, it is my opinion that a city has separate authority to levy and collect the additional $5.00 fine by ordinance pursuant to A.C.A. 16-17-129, apart from the county. Similar to the county, however, there may be a lingering issue concerning the ordinance's applicability. In my opinion, only a court can conclusively determine whether the city ordinance applies to cases on the county docket. I cannot conclusively opine on the issue, absent a judicial ruling or legislative clarification.
Assistant Attorney General Elisabeth A. Walker prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:EAW/cyh
[1] Arkansas Constitution Amendment 80 established "district courts" effective July, 2001; and Act 1693 of 2001 (A.C.A. § 16-17-132 (Supp. 2001)) changed the name of "municipal courts" to "district courts." District courts are thus the successors of municipal courts following the adoption of Amendment 80.
[2] This codification reflects an effort to combine Acts 1188 andAct 1185 of 2003, the latter being the technical corrections act to implement Ark. Const. amend. 80. See n. 1, supra. Prior to its amendment by Act 1188, A.C.A. § 16-17-129 only authorized cities and towns to levy the additional $5.00 fine. Act 1185 amended the former, pre-Act 1188 version of § 16-17-129 to reflect the change from municipal to district courts. The above codification blends Acts 1188 and 1185, in an attempt to include the substantive provisions of both. The codification is somewhat confusing, however, in providing that the governing body of each city, town, and county may levy and collect the fine from each defendant for any misdemeanor or traffic violation in the "city court of the city,town, or county, or in the district court for the district in which thecity or town is located." (Emphasis added). While this language may be somewhat unclear in establishing the county governing body's authority to levy and collect the additional $5.00 fine for misdemeanor and traffic violations in the former municipal, now district, courts, this clearly was the intent of Act 1188. See Op. Att'y Gen. 2003-113. Any uncertainty or ambiguity in this regard is clarified upon reviewing the legislative history of A.C.A. § 16-17-129.
[3] See A.C.A. 16-17-707 (c) (Supp. 2003) (requiring that all disbursements from the classes of accounts established there under shall be pursuant to A.C.A. 16-10-201 et seq., the district courts' accounting law).